Stubbings and another, Appellants, vs. Curtis and others, imp.; Respondents.

*February 6 — February 26, 1901.*

*Conditional sale of standing timber: Reservation of title until payment: Rights of* bona fide *purchaser: Estoppel: Filing contract: Evi-dence: Cross-examination: Appeal: Exceptions.*

1. The vendor of standing timber under a contract reserving title in himself until payment of the purchase price, who contemplated at the time of the sale that his vendees were to manufacture the logs and sell the lumber therefrom, and who so dealt and acted con-

Stubbings and another vs. Curtis and others.

cerning such lumber as to lead an ordinarily prudent man to believe that his vendees were the owners thereof or that they had authority to sell the same and give title thereto, is estopped to assert his reserved title as against purchasers from said vendees who bought and fully paid for the lumber without knowledge of his title or of any facts to put them upon inquiry in reference thereto.

2. The original contract of sale in such case, being a contract for the sale of real estate, was not entitled to be filed in the city clerk's office, and evidence that it was so filed was inadmissible in an action against purchasers from the original vendees who are not shown to have had actual knowledge of that fact.

3. Where a witness is not a party, cross-examination relating to matters not gone into on the direct examination is properly excluded.

4. Refusals to give requested instructions cannot be reviewed on appeal unless exceptions thereto are taken and preserved in the bill of exceptions.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. Affirmed.

This is an action to recover the value of a quantity of lumber alleged to have been the property of the plaintiffs, and to have been converted by the defendants in the year 1889. The complaint alleged that the plaintiff Stubbings was in the year 1886 the owner of certain pine lands, and that on the 20th of November in that year he sold the standing pine thereon to the defendants Leahy & Beebe for the sum of $45,000, by a written contract of sale, in which the title of said timber and the lumber to be manufactured thereof was reserved to the plaintiffs until the purchase price should be paid. The complaint further alleged that in the years 1888 and 1889 Leahy & Beebe cut and removed about 5,000,000 feet of said timber, and sold the same to the defendant Curtis Bros. & Co., at Wausau, Wisconsin. The defendants by their answer denied any liability, and also claimed that Stubbings had by his conduct waived his reservation of title, and that the defendant Curtis Bros. & Co. purchased and paid for the timber in good faith and without knowledge of the plaintiffs' claim.

Upon the trial the question chiefly litigated was whether *Stubbings* by his conduct had estopped himself from asserting his title. It was not denied but that the *Curtis Bros. & Co.* received a quantity of logs cut from the *Stubbings* tract, amounting, as the jury found, to 900,000 feet, and converted the same into lumber, and paid Leahy & Beebe therefor, and sold the same to their customers.

A special verdict was demanded and returned as follows:

"(1) Did the plaintiff *W. H. Stubbings* and defendants Leahy & Beebe enter into the written contract for the sale of standing pine timber described in the complaint, and dated November 20, 1886, but which was in fact executed about one year later,— in the fall of 1887? *A. (by the court)*: Yes.

"(2) Were there in the fall of 1886 verbal negotiations between said parties looking to a sale of the same timber, in which the parties verbally agreed upon the purchase price and times of payment thereof, and pursuant to which Leahy & Beebe paid $5,000 of the purchase price thereof, and commenced to cut and remove the timber therefrom; and did the said written contract, executed about one year after its date and the date of said verbal agreement, in fact change the times when deferred payments should be made, by extending the time of each of said deferred payments one year beyond the time fixed by said verbal agreement? *A. (by the court)*: Yes.

"(3) Did plaintiff *Stubbings* own said pine timber at the time of said verbal negotiations and of the making of said written contract? *A. (by the court)*: Yes.

"(4) Did said Leahy & Beebe cut and remove the said timber to their mill in Wausau, and there manufacture the same into lumber? *A. (by the court)*: Yes.

"(5) Was the said lumber, or any part thereof, sold by Leahy & Beebe to defendant *Curtis Bros. & Co.* by written contract under date of March 18, 1889; and did said *Curtis Bros. & Co.* receive and convert the said lumber to their own use? *A. (by the court)*: Yes.

"(6) Was the defendant *C. S. Curtis* at said times the agent and general manager of the said *Curtis Bros. & Co.;* and did he, as such agent and general manager, aid in the purchase and conversion of said lumber? *A. (by the court)*: Yes.

" (7) What amount of lumber was so purchased and converted by the said *Curtis Bros. & Co.* by and with the aid of *C. S. Curtis*, as agent and general manager? *A.* 900,000 feet.

" (8) What was the value of the lumber so converted at the time it was so converted? *A.* $8 per M.

" (9) Did *Curtis Bros. & Co.* or *C. S. Curtis*, its general manager, have knowledge when said lumber, or any part thereof, was so converted, that the plaintiff *Stubbings* owned or claimed said ·lumber, or any right or interest therein. *A.* No.

" (10) If you answer the last (ninth) question 'No,' then did said *Curtis Bros. & Co.*, or *C. S. Curtis*, its general manager, have knowledge or notice of any fact or facts which would put a reasonably cautious man upon inquiry, and which would, had they been followed by reasonable diligence upon the part of said *Curtis Bros. & Co.*, or *C. S. Curtis*, its general manager, have led to their discovery of the fact that *Mr. Stubbings* owned the said lumber? *A.* No.

" (11) If you answer either of questions 9 or 10 'Yes,' then how many feet of lumber was so converted by defendants with knowledge that *Stubbings* owned and claimed the lumber, or was so converted with knowledge of any fact or facts which would have led an ordinarily prudent man to a discovery that *Stubbings* owned the lumber (as explained in question 10)? [Not answered.]

" (12) If to questions 9 and 10 you answer that said defendants converted lumber with knowledge that *Stubbings* owned it, or with knowledge of facts that ought to have led to a discovery by defendants that he owned it (the lumber), then state the value, when converted, of the lumber so converted with such knowledge. [Not answered.]

" (13) Did the plaintiff *Stubbings* so deal and act concerning the lumber converted by defendants as to lead an ordinarily prudent man to believe that Leahy & Beebe were the owners of said lumber, or that they had authority to sell and give a title to the said lumber? *A.* Yes."

The plaintiffs made a motion to set aside the verdict and for a new trial, which was denied by the court, and judgment of dismissal of the complaint was entered, from which the plaintiffs appeal.

For the appellants there was a brief signed by *Brown &
Pradt*, and oral argument by *Neal Brown.*

For the respondents there was a brief by *Mylrea & Bird*,
attorneys, and *Ryan, Hurley & Jones*, of counsel, and oral
argument by *M. A. Hurley* and *C. B. Bird.*

WINSLOW, J. The plaintiff sold to Leahy & Beebe a
quantity of standing pine, with the right to cut and man-
ufacture the same, but reserving title to the logs and lum-
ber manufactured therefrom until the purchase price was
fully paid. Leahy & Beebe cut the pine, marked it with
their own mark, banked it on Tamarack river, and sold a
part of it to the defendant *Curtis Bros. & Co.*, under a
written contract that they (Leahy & Beebe) should manu-
facture it into lumber and pile it as directed by *Curtis Bros.
& Co.* This was done, and the same was delivered and
fully paid for by the defendants; but it appears that Leahy
& Beebe had never fully paid the plaintiff for the pine, and
the plaintiff therefore claims to recover of the defendants
the value of the lumber, on the ground that title had never
passed to Leahy & Beebe. The defendants claim that the
plaintiff was estopped from enforcing his reserved title as
against them, and the question whether such an estoppel
was shown by the evidence was the question sharply liti-
gated upon the trial.

The legal principles applicable to the question litigated
have been so recently discussed and stated in the case of
*Mississippi River L. Co. v. Miller, ante*, p. 77, that it is un-
necessary to repeat them here. The facts relied upon to
prove an estoppel in that case were almost identical with
the facts found by the jury in the present case, except that
it appears more clearly in the present case that the plaint-
iff contemplated that his vendee was to manufacture the
logs and sell the lumber therefrom than it did in the case
cited. Within the principles there stated, an estoppel clearly
appears in the present case, upon the facts found by the

jury. Such being the case, the only questions to be considered are whether prejudicial errors occurred upon the trial.

It is claimed that it was error to exclude evidence showing that the contract of sale made by *Stubbings* to Leahy & Beebe was filed in the office of the city clerk at Wausau. As this was a contract for the sale of real estate, it was not entitled to be filed. Such filing, if made, was an act which protected no legal right and constituted no notice to any one; and, as there was no proof that any of the defendants had actual knowledge of the fact, it seems clear that the proof offered was immaterial.

One Cline, the foreman of Leahy & Beebe's mill, was examined by the defendants, and gave testimony as to the sale of the lumber to *Curtis*, and also as to a conversation with the plaintiff at Wausau while *Curtis* was removing the lumber, in which he told *Stubbings* of the sale to *Curtis*. Upon cross-examination the plaintiff endeavored to prove by the witness certain letters which passed between him and the plaintiff as to the amount of timber remaining uncut on the *Stubbings* lands in the fall of 1890. Upon objection the letters were ruled out as not proper cross-examination. This ruling seems to have been strictly correct. The witness was not a party to the action, and the cross-examination attempted did not relate to matters gone into on direct examination. *Sullivan v. Collins*, 107 Wis. 291. Furthermore, the letters were all introduced in evidence by the plaintiff later in the trial.

A large number of instructions were asked by the plaintiff and refused, but we are relieved from any examination of them because no exceptions to the refusal are preserved in the bill of exceptions. While some exceptions were taken to certain instructions which were given, we have discovered none which was erroneous or deserves detailed discussion.

*By the Court.*— Judgment affirmed.

BARDEEN, J., took no part.