## Adams *versus* McKesson's Executrix.

1. The lessee of land, sold under a judgment prior to his lease, does not become tenant at will of the purchaser, until after notice of the purchaser's election to determine the tenancy.

2. Such lessee is as completely the tenant of the purchaser under a verbal lease of less than three years, as under a written lease and under a demise of part of the land as of the whole.

3. One hired to work land and receive as compensation part of the produce, is a cropper, not a tenant.

4. After the issuing of a vend. ex. on which Reinhart's land was sold, he agreed with Foreman to put part of it in with wheat, Foreman to receive two-thirds of the crop. *Held*, that Foreman was a cropper and not a tenant at will of the purchaser at sheriff's sale, entitled to the emblements.

5. The purchaser sold the land with general warranty: Foreman afterwards took away two-thirds of the crop. *Held*, that the entire crop passed to the sheriff's purchaser and to his grantee, and that the grantee could not defalk the value of the grain taken by Foreman from the unpaid purchase-money.

Error to the Court of Common Pleas of *Franklin county*.

A judgment was entered, March 4th 1861, against William Adams, in favor of Louisa McKesson, executrix, &c., of S. R. McKesson, deceased, on a single bill, dated January 21st 1861, for $1000, given to the decedent, on which $500 remained due July 17th 1862. On the application of Adams the court opened the judgment and let him into a defence.

Jacob and Catharine Reinhart were the owners of a tract of land encumbered by a number of judgments; after a venditioni exponas had been issued on one of them, Mrs. Reinhart agreed verbally with one Foreman " to put out from twenty-five to thirty acres of the farm in wheat; Foreman to have two-thirds of the crop, and Mrs. Reinhart one-third."

The land was sold by the sheriff to S. R. McKesson and conveyed to him November 2d 1860. On the 21st of January 1861, McKesson conveyed the land to Adams by deed with general warranty, the above-mentioned single bill being for part of the purchase-money. Foreman at the next harvest cut the grain against Adams's notice to him not to do so. The whole crop amounted to 584 bushels, of which Foreman delivered to Adams one-third. Adams as a defence to the bill claimed to defalk from it the value of the other two-thirds less the expenses of gathering it, &c.

The defendant submitted the following points, viz. :—

1. That inasmuch as the grain now in question was growing on the premises, when by the articles of agreement, 7th December 1860 and deed of 21st January 1861, McKesson sold to defendant, the defendant was entitled to the crop, and as Foreman took away two-thirds of it, amounting to $328.48, the defendant is entitled to a credit on the balance of the judgment to that extent.

3 P. F. Smith—6

2. That if McKesson did not acquire a title to the two-thirds of the crop claimed by Foreman, that fact cannot affect the right of Adams to have the deduction made for the two-thirds as against McKesson on the judgment.

King, P. J., answered these points, and concluded his charge as follows :—

" In answer to the 1st point we say, that if it be, as here assumed, that the defendant was entitled to the crop, and that Foreman took it away, still it does not follow that the defendant in this case can look to the estate of McKesson for indemnity. If it is meant that Adams was entitled to the crop because it was transferred to him by the deed from McKesson, then, in order to establish his right to the credit claimed, it should be made to appear that Foreman had a legal title to two-thirds of the crop and had a right to take the same off the premises. But we have already decided that Foreman had no such right, and consequently the position of the defendant is not sustained.

" If we understand the 2d point correctly, it takes the position that McKesson by his deed to Adams transferred not only the land but the grain growing upon it, even although he only acquired by the purchase at the sheriff's sale the landlord's share of the crop, and that in order to protect himself against any claim for the wheat crop, he should have reserved it in his deed. We think this position to be correct ; but having settled that Foreman had no legal title to the crop, this point is of no consequence in the case.

" Upon a view of the whole case, we are of opinion that the defendant is not entitled to defalk the value of the two-thirds of the crop, and that the plaintiff is entitled to a verdict for the whole amount of her demand."

The jury having found a verdict for the plaintiff for $605.42, the foregoing parts of the charge were assigned for error.

The paper-book of the plaintiff in error was not signed, and no cases were cited.

*G. W. Brewer* and *J. McD. Sharpe*, for defendant in error, cited Bittinger *v.* Baker, 5 Casey 65, as overruling Sallade *v.* James, 6 Barr 144, and Groff *v.* Levan, 4 Harris 179.

The opinion of the court was delivered by

STRONG, J.—Bittinger *v.* Baker, 5 Casey 66 (overruling Sallade *v.* James, 6 Barr 144, and Groff *v.* Levan, 4 Harris 179), is supposed to govern this case and decide it in favor of the plaintiff in error. The doctrine of that case is, that a lessee of land encumbered by a judgment older than the lease, is entitled to the waygoing crop in preference to a purchaser at sheriff's sale, under

the judgment. The decision was based upon the provisions of the Act of Assembly of June 16th 1836, entitled "An act relating to executions," which, it was thought, make a lessee holding under a lease of later date than the lien, a tenant at will of the purchaser under such lien. From this it seemed to follow that if he had a crop in the ground before notice of his landlord's election to determine the tenancy, he has a right to take it away. If this is so, it is obvious that it can make no difference at what time prior to the sheriff's sale the lease was made or the grain was sown. In Bittinger v. Baker the lease was made after the entry of the judgment, and before the execution was issued under which the land was sold. The grain in the ground was also sown, it is probable, before the execution was sued out. But the issue of an execution does not determine the tenancy of the lessee, nor even convert his tenancy for years into a tenancy at will. At most it informs him anew of what the judgment had previously informed him, that he may become a tenant at will of whatever person may purchase his landlord's interest in the property. Until he receives notice of the purchaser's election to determine his tenancy, he has a right to the enjoyment of the subject of the demise. He is in possession under a title that may be determined by a contingency not within his control, and hence it is held that a determination of his lease, by the happening of such a contingency, shall not prevent his reaping what he has sown. Nor is the principle of Bittinger v. Baker affected by the question whether the lease of the judgment-debtor to his lessee be in writing or verbal, or whether it be a demise of the entire possession of the land, or only a partial possession. A parol lease not exceeding three years is as valid as any other, notwithstanding the Statute of Frauds, and a lessee of a part of the land becomes as completely a tenant at will of the purchaser at the sheriff's sale as he would be if the subject of the demise were the lessor's entire interest. It is not then on these grounds, if on any, that the case before us is to be distinguished from Bittinger v. Baker. But the doctrine of that case is applicable only where the person who claims the crop was a lessee of the land sold at the sheriff's sale. It is such a person only who becomes a tenant of the purchaser at the sale, under the 119th section of the Act of Assembly. A mere cropper is no such tenant. If one be hired to work land, receiving for his compensation part of the produce, he is a cropper not a tenant. "He has no interest in the land, but receives his share as the price of his labor. The possession is still in the owner of the land, who alone can maintain trespass ; nor can he distrain, for he does not maintain the relation of landlord and tenant, which is inseparable from the right of distress." Thus it was laid down by Rogers, J., in Fry v. Jones, 2 Rawle 12.

In the case we have before us, we have not been furnished with

[Adams *v.* McKesson's Executrix.]

the evidence. The paper-book of the plaintiff in error, however, presents the case thus: "that after the judgments were obtained against the property, and after the sheriff held the inquest, which resulted in the condemnation of the land, and after the venditioni exponas was issued, but before the sale was made by the sheriff, Frederick Foreman made a verbal agreement with Catharine Reinhart (the debtor), to put out from 25 to 30 acres of the farm in wheat; Foreman to have two-thirds of the crop, and Mrs. Reinhart one-third." If this be a correct statement, and it is the plaintiff in error's own version, not questioned by the other side, it is not a case of tenancy at all. Foreman under the contract was a mere cropper, and not a tenant at will of the purchaser at sheriff's sale, entitled to emblements on the determination of his lease by the landlord. It follows that the doctrine of Bittinger *v.* Baker is inapplicable to his case, that the entire crop passed by the sheriff's sale to McKesson, and by his deed to Adams, and consequently that the plaintiff in error had nothing to defalk from the claim of the plaintiff below. In this view of the case no error appears in the charge of the court below, or in the refusal to affirm the defendant's points, and the jury was correctly instructed that their verdict should be for the plaintiff for the whole amount of her demand.

Judgment affirmed.