## Steel *versus* Frick.

1. A cropper is one hired to work land, and to be compensated by a share of the produce.

2. A contract for cropping gives the cropper no legal possession of the premises further than as a hireling; the legal possession is in the hirer, and the remedy by distress is not applicable.

3. A contract was that Steel agreed to let Frick farm his part of a farm for one year, to haul out the manure; "all to be done in a sufficient manner as farming should be done, and to pay all the taxes, and to have all the pasture during" the term, and to deliver to Steel one-half of all the oats, &c. *Held* to be a lease.

[Steel *v.* Frick.]

4. That the rent was payable in kind by a share of the grain does not take from the contract its character of lease.

5. The contract was a covenant for quiet enjoyment, and the lessee being kept from obtaining possession by one in under the lessor, the agreement for tenure was broken, and the lessor was liable for damages.

November 6th 1868.  Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the Court of Common Pleas of *Westmoreland county :* No 90, to October term 1866.

This was an action of covenant, commenced April 6th 1863, by David Z. Frick against James Steel, and was founded on an article of agreement dated January 8th 1862, by which " Steel agrees to let the said Frick farm his part of the Warden farm, now in the occupancy of James D. Porter, for the term of one year, commencing on the 1st day of April next—the said Frick to put one field in corn, and work it sufficiently well, and to put the cornstalk field out in oats in the spring in good time and order, and to sow so much of the land in wheat and rye in the fall as the said Steel may wish, or as is fit to be sowed, and to haul out all the manure and put it on the ground before sowing, and to keep up the fences in good repair, and to sow so much of the land with timothy and cloverseed as is not intended to be ploughed immediately again, and to deliver the said Steel the one-half of all the oats, corn, wheat and rye at market, when wanted or ready for delivery.  All to be done in a sufficient manner as farming should be done, and to pay all the taxes assessed or to be assessed for the year 1862—the said Frick is to have all the hay he makes, and all the pasture during said year on said land."

The " Warden farm" contained in the whole about 159 acres, and belonged to Steel and one David Williams.  In an action of partition by Williams against Steel, to February Term 1862, judgment *quod partitio fiat* was rendered May 12th 1862, and a writ *de part. fac.* issued to August Term 1862.

The evidence was, that Frick went to the house on the premises on the 1st of April 1862 with all his goods.  Porter had the house locked and would not let Frick in ; he had to haul his goods away and put them into a barn about two miles off, and his family into an almost untenantable house at another place.  There was evidence that Frick was not prevented from farming the land, but made no attempt to do so ; also, that upon Frick's informing Steel that he could not get possession, Steel said he would give him a house and land off his own farm, more than he was to get there ; that Steel thought the offer was a good one, but that he did not wish to leave the neighborhood.

The court (Buffington, P. J.) charged :—

" Steel and Williams were the owners of this land as tenants in common.  Steel leased his part to the plaintiff, Frick, from 1st

[Steel *v.* Frick.]

April 1862 to 1st April 1863. This is not a contract to lease to him the whole of the land, but only his part. The name of Porter is introduced, not to define the amount of interest leased, but the description of the. tract, his interest in which was leased. Steel had no right to the entire possession, but Williams had as good a right to his part of the tract. [Steel, however, did agree to lease to him his part of the land. That was a covenant to enable him to get and hold the possession, and enjoy the undivided half or all the interest Steel had, including not only the farm land, but the barn, house and other buildings necessary to the enjoyment of the farm.] If he made a contract which he could not comply with, it was his fault, or his misfortune; and if the contract was a fair one, Frick had a right to the possession, and was prevented from enjoying the premises according to the spirit of the agreement, and he could not enjoy it, either by the act of Steel, or his want of right or power to give possession, then the tenant would be entitled to recover whatever damages he sustained.

"[If the jury believe Frick was thus deprived of the possession, either by the act or want of power in Steel to give possession, Frick is entitled to recover.] It is no excuse that he could not give possession."

There was a verdict for the defendant for $315.91 damages.

The defendant took a writ of error, and assigned for error the parts of the charge included in brackets.

*H. D. Foster*, for plaintiff in error, cited Leber *v.* Kauffelt, 5 W. & S. 444; Chapman *v.* Dalton, Plowd. 286.

*H. P. Laird*, for defendant in error, cited Lehigh Navigation Co. *v.* Harlan, 3 Casey 430; Coleman *v.* Grubb, 11 Harris 393; Watson *v.* O'Hern, 6 Watts 368; Moore *v.* Miller, 8 Barr 283.

The opinion of the court was delivered, November 18th 1867, by

THOMPSON, J.—If the agreement between the plaintiff and defendant in this case, is to be regarded as a lease of the premises, it would pass the possession of the buildings on it to the lessee. It would necessarily be a covenant for quiet enjoyment. The instrument is very inartificial, but we think it contains all the elements of a lease.

It sets out by a stipulation, that "Steel agrees to let Frick farm his part of the Warden farm, now in the possession of James D. Porter." This is a letting to farm by equivalent words to these, " *To farm let*," which are operative terms in leases. The premises mentioned were well understood, at least no dispute exists on the ground of description. After this preliminary stipu

[Steel *v.* Frick.]

lation, then follows " for the term of one year." It may as well be said here, that this and what follows is nothing like a contract for cropping. After stipulating about the mode in which the farming was to be done, and that the lessee should haul out all the manure to the fields, and keep the fences in good repair, then follows the reservation of rent, which was to be " the one-half of all the oats, corn, wheat and rye, to be delivered to Steel at market when wanted, or ready for delivery, and the payment of all the taxes for the year 1862. Frick to have all the hay and the pasture of the land during the year."

A cropper is one hired to work land and to be compensated by a share of the produce. Such a contract gives him no legal possession of the premises, further than as a hireling. The legal possession remains in the hirer or landlord, and hence the remedy by distress is not applicable to him: Fry *v.* Jones, 2 Rawle 11 ; Adams *v.* McKesson, 3 P. F. Smith 81. That the above contract is not a hiring to work land merely, is evident. The lessee was to *farm* the lessor's share or portion of the Warden farm for the term of one year—to do it in a sufficient manner as farming should be done, and to pay all taxes. This left the mode of farming to the lessee, as it is not stipulated to be done in a particular way, and necessarily gave him the possession and control to do the farming in his own way, unlike the relation of a mere hireling—still more unlike cropping, as the stipulation that the lessee was to pay the taxes. One hired to crop would hardly be expected to pay taxes. But it is further apparent in this, that Frick was to have the possession of the premises for the specified term, on the stipulation that he was bound to haul out the manure, and keep the fences in repair. These stipulations clearly look to a possession of the premises by the lessee ; so, too, is the stipulation for all the pasturage during the year. If then the contract means, as we think it does, that the possession was to be in Frick, this evinces the intention to create a tenancy.

That the rent was reserved, payable in kind by a share of the grain, does not militate against the idea of a lease. In Fry *v.* Jones, on the demise of a grist-mill, the lessee to render one-third of the toll as rent, it was held by this court that the lessor might distrain for rent. The principle to be applied in that case was illustrated by the learned judge, by the case of farm-letting. "We have almost always," says Rogers, J., " adopted the mode of renting for a share of the produce of the farm, which is preferred by tenant and landlord ;" and he follows this remark by concluding that a distress was the remedy in such a letting. An implication of a doubt in Warren *v.* Forney, 13 S. & R. 52, whether the right of distress is incident to a lease, may possibly arise from the remark of Tilghman, C. J., in refusing to express any opinion on the point, although he said he did not consider it

[Steel *v.* Frick.]

legitimately belonging to it; but Fry *v.* Jones was decided five years subsequently, and both by illustration and the announcement of the very principle settled the doctrine that it is. So in Jones *v.* Gundrim, 3 W. & S. 531, rent payable in hire was held to be liable to distress, and the case of Jones *v.* Fry was relied on as authority for it. The same doctrine is very distinctly announced in Rinehart *v.* Olwine, 5 W. & S. 157. We consider the doctrine settled, and that in this case there was a letting for a term, with a reservation of rent sufficiently certain to permit of a distress. This being so, the agreement for tenure was broken on the failure of the plaintiff to get possession, being kept out by a person in possession under the defendant. The declarations of the defendant, and his offer to give the plaintiff a house and land in another place, was some evidence of the understanding as to the possession. Upon the whole, we see no error on the part of the court in construing the instrument in question a lease, and in charging as it did on the subject-matter complained of.

Judgment affirmed.