## Acklin, Appellant, *v.* McCalmont Oil Company.

*Oil and gas lease—Evidence—Rebuttal.*

In an action to recover the half of royalties under an oil and gas lease, where it appears that the land was owned by plaintiff's father, that plaintiff was a mere cropper, and the evidence for the defendants showed that although the plaintiff had signed the lease with his father, he had claimed no interest in the land or in the oil at the time of the execution of the lease, it is improper to permit the plaintiff in rebuttal to offer proof by a witness otherwise competent, that at the time of the execution of the lease, plaintiff's father had stated to the lessee that plaintiff was to have one half of the royalties, nor can plaintiff in rebuttal show reasons for delay in claiming the royalties.

. Plaintiff cannot claim as a right to give as evidence in rebuttal that which he might have given in chief.

*Evidence—Competency of witness—Party dead—Oil and gas lease.*

In an action to recover royalties on an oil and gas lease where it appears that the plaintiff signed the lease with his father who owned the land, the plaintiff is an incompetent witness to prove declarations of his father to the effect that he, the plaintiff, was to have half of the royalties.

*Evidence—Rebuttal—Re-examination of witnesses.*

A party has a right in rebuttal to re-examine his witnesses as to matters that require explanation.

It is error to refuse to permit a plaintiff to explain testimony of his own taken in a former trial and offered in evidence by the defendants. If, however, at a subsequent period in the trial he is afforded an opportunity to make such explanation, the error is harmless.

*Oil and gas lease—Royalties—Evidence—Case for jury.*

In an action to recover one half the royalties under an oil and gas lease it is proper to submit the case to the jury where the evidence shows that the plaintiff was a mere cropper on the land leased, that the land was owned by his father, that plaintiff had signed the lease with his father, and that at the time the lease was executed nothing was said as to the plaintiff being entitled to any share of the royalties.

*Appeals—Assignments of error—Supreme Court practice.*

Assignments of error relating to rulings upon offers of evidence will not be considered where such assignments fail to quote the testimony which was given under the offers.

Argued Oct. 31, 1901. Appeal, No. 87, Oct. T., 1901, by plaintiffs, from judgment of C. P. No. 3, Allegheny Co., May T., 1898, No. 442, on verdict for defendants in case of George W. Acklin, Administrator c. t. a. of the Estate of Peter Swint, Deceased, and J. E. Swint, now for the use of J. E. Swint, v. The McCalmont Oil Company, H. W. Locke and F. W. Leidecker. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit to recover royalties under an oil and gas lease. Before Kennedy, P. J.

See Swint v. McCalmont Oil Co., 184 Pa. 202.

At the trial it appeared that plaintiff claimed to recover one half the royalties accruing under an oil and gas lease which he and his father had signed. The evidence showed that plaintiff was a mere cropper at the time the lease was executed and had no property interest in the land.

Madie Swint, a daughter of plaintiff, being upon the stand as a witness for plaintiff in rebuttal, plaintiff made this offer:

Mr. Ritchey: I propose to prove by the witness on the stand that her grandfather, Peter Swint, at the time of the execution of the lease in question by himself and J. E. Swint to H. W. Locke, also stated that J. E. Swint, his son, was to have one half of this royalty, this statement being made to Mr. Locke.

Offer objected to as incompetent, irrelevant, immaterial and not rebuttal.

Objections sustained, exceptions to plaintiff and bill sealed. [4]

J. E. Swint, plaintiff, being on the stand as a witness in rebuttal, was asked this question:

" Q. I will ask you whether or not your father, at the time this lease was signed, or before the signing of this lease, when you and your father and Mr. Locke were present, in the presence of Mr. Locke, stated anything about why you were put in this lease to Mr. Locke and what interest you would have in it, or what proportion of the royalty you would get."

Objected to as incompetent, irrelevant and immaterial, and attempting to prove the declaration of Peter Swint, who is admitted to be dead.

Objection sustained, exception to plaintiff and bill sealed. [5]

Mr. Ritchey: We propose to prove by the witness on the stand that at the time of the application of A. B. Brian, agent of the W. G. Hunter & Company, to Peter Swint to lease the farm of Peter Swint, in Franklin township, Allegheny county, that the witness, J. E. Swint, with his family was residing upon said farm under an agreement with his father, Peter Swint, that he was to receive one half of the product of the farm, his father making his home with him, and that in the course of the conversation at the time of the first application by the said Brian, it was stated by Peter Swint that J. E. Swint, the witness, should be made a party to the lease and should receive an equal share of the royalty the same as he received the other products of the farm, and that the lease of Peter Swint and J. E. Swint, of the first part, to W. G. Hunter & Company, of the second part, dated December 3, 1885, signed by Peter Swint and J. E. Swint and W. G. Hunter & Company, per A. B. Brian, was pre-

pared by A. B. Brian under the direction of Peter Swint that Peter Swint and J. E. Swint were to be the lessors, and that after it was prepared by the said A. B. Brian, it was signed by the parties and delivered with the understanding and agreement by all parties that Peter and J. E. Swint were the lessors; this for the purpose of corroborating the lease and explaining it, and corroborating the lease of Peter Swint and J. E. Swint to H. W. Locke, and as establishing the probability of these leases, and for the purpose of rebutting the testimony of H. W. Locke.

Offer objected to by counsel for defendants as incompetent, irrelevant and immaterial; especially objected to for the reason that Peter Swint is dead and this is an attempt by the other party to the contract with Peter Swint to prove his declarations during his lifetime, no other witness present during the transaction having been sworn or testified in this case; it is further objected to as not being rebuttal testimony to anything offered by defendants in this case.

Objection sustained and exception granted to plaintiff and bill sealed. [6]

" Q. I will ask you if, prior to the bringing of your first action to recover your interest in these oil leases, as you claim it, you mentioned the fact of bringing that action to your father ? "

Objected to by counsel for defendants as above.   Objection sustained, exception to plaintiff and bill sealed. [7]

" Q. I will ask you why you didn't proceed to collect your claim for royalties under these leases, after you had consulted Judge Bredin."

Objected to by counsel for defense.

Counsel for plaintiff propose to prove by this witness that after he had been advised by his counsel as to his interest in these leases and as to his right to recover, he was unable to meet the expense of the litigation at that time, some $200, and that owing to his inability to meet that expense, he was unable to proceed with it, at that time.   This for the purpose of explaining the delay of the plaintiff in bringing his first action to recover his interest in these royalties, and as rebutting any presumption arising against him on account of any laches from the fact that he did not bring his first action until May, 1895, as testified to by Mr. Locke.

Offer objected to by counsel for defendants, as incompetent,

irrelevant and immaterial, and not rebuttal, and as an attempt to show transactions between client and counsel.

Objections sustained, exception to plaintiff, and bill sealed. [8]

Cross-examination by Mr. Weil:

"Q. You testified before in this case, did you not? A. Yes, sir. Q. I ask you now if you didn't testify in this case as folows: 'Q. But no conversation of this kind occurred at all at the time the Locke lease was made, as you testified this morning? A. No, sir, it didn't occur. It was just simply going over the same thing and giving the lease to Locke on the same conditions as what the lease was to the Hunter Company.' Q. I am asking you what you said. You testified this morning that nothing of the kind was talked over at the time the Locke lease was made—that that lease was drawn in the same form as the other, and that nothing was said by your father or yourself to Mr. Locke upon that subject. A. Not that I remember of. Q. That's a fact, is it? A. I don't remember anything particularly. Q. Didn't you so testify at the other hearing? A. I presume I did. Q. Is this a fact that you testified to? A. Yes, I testified according to that. Q. Is that a fact, what you then testified to? A. Well, the question is immaterial in regard to as far as the lease is concerned. Q. Were you telling the truth then, when you testified to that? A. Yes, I was telling the truth."

The court erred in sustaining defendants' objections to the following questions:

Mr. Ritchey: I would ask if it was in your testimony, when you testified that the lease was given under the same terms as the Hunter lease, if you meant by that, that the conversation and talk was the same as at the time the Hunter lease was given and the arrangement was the same between yourself and father?

Objected to by counsel for defense and objection sustained. [9]

"Q. In your testimony that you have been interrogated upon by Mr. Weil, in the testimony on this point that you gave on the former trial, you testified as follows: 'Q. But no conversation of this kind occurred at all at the time the Locke lease was made, you testified this morning? A. No, it didn't oc-

cur.   It was just simply going over the same thing and giving the lease to Locke on the same condition as what the lease was to the Hunter Company.'    By that answer what did you mean? "

Objected to and objection sustained. [10]

Counsel for plaintiff offer in evidence the testimony of J. E. Swint taken at the former trial of this case, in connection with, and explanation of the portion of said testimony put in evidence by the defense; for the purpose of showing that J. E. Swint's testimony there was the same substantially as now, and for the purpose of showing the conversation therein referred to.

Offer objected to by counsel for defendants, (1) because the testimony referred to by counsel contained the declarations of Peter Swint and the transactions between Peter Swint and J. E. Swint during the lifetime of Peter Swint, which testimony has been repeatedly ruled in this case to be incompetent; (2) for the reason that the testimony referred to does not explain, qualify, or in any manner impeach the testimony which the witness gave in reply to the question propounded by counsel when the testimony which he had given at the former hearing was read; (3) as incompetent, irrelevant and immaterial; (4) as not being rebuttal testimony; the question propounded to the witness was propounded on cross-examination, the witness was then upon the stand and could have been examined by counsel upon this same question, if they had so desired at that time; the case being closed by the defendant, who had rested, the witness cannot now in rebuttal be asked to explain testimony which he, himself, had given and upon which he could have been examined at the time.

Objection sustained, exception to plaintiff, and bill sealed. [11]

Counsel for plaintiff propose to prove by the witness, Mrs. J. E. Swint, on the stand, that at the time of the application of A. B. Brian, the agent of W. G. Hunter & Co., to Peter Swint to lease the farm of said Peter Swint in Franklin township, Allegheny county, J. E. Swint was residing with his family upon said farm under an agreement with his father, Peter Swint, that he was to receive one-half of the product of the farm, his father, Peter Swint, making his home with him; and that in the course of the conversation at the time of the first application by said A. B. Brian, it was stated by Peter Swint that J. E. Swint should be made a party to the lease and should receive

an equal share of the royalties, the same as he receives the other products of the farm, and that the lease of Peter Swint and J. E. Swint, of the first part, of W. G. Hunter & Co., of the second part, dated December 3, 1885, and signed by Peter Swint and by J. E. Swint and by W. G. Hunter & Co., was prepared by A. B. Brian under direction that Peter and J. E. Swint were to be the lessors, and that it was signed by the parties and delivered with the understanding and agreement of all parties that Peter and J. E. Swint were the lessors. This for the purpose of corroborating the lease and explaining it, and corroborating the lease of Peter Swint and J. E. Swint to H. W. Locke, and for the purpose of rebutting the testimony of H. W. Locke."

Objected to by counsel for defense as incompetent, irrelevant and immaterial, and not rebuttal testimony.

Objection sustained, exception to plaintiff and bill sealed [11]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–11) rulings on evidence, quoting the bill of exceptions; (21) in refusing binding instructions for plaintiff.

*James T. Buchanan,* with him *J. L. Ritchey,* for appellant.— Parol evidence is not admissible to alter or vary written instruments unless the foundation for its admission has been laid by proof of a fraud, accident or mistake : Union Storage Company v. Speck, 194 Pa. 126; Leibert v. Heitz, 193 Pa. 590 ; Wodock v. Robinson, 148 Pa. 503; Merriam v. Bush, 116 Pa. 279; Hunter v. McHose, 100 Pa. 38; Thorne et al. v. Warfflein, 100 Pa. 519 ; Zeigler v. McFarland, 147 Pa. 609.

In order to vary or change the terms of a written agreement, the evidence must be clear, precise and indubitable, and it must be established by the testimony of two witnesses or by one witness corroborated by circumstances equivalent to another: Hall v. Phillips, 164 Pa. 494.

If plaintiff was not competent to do so under the act of 1887, he was clearly competent under the act of June 11, 1891, after H. W. Locke had been upon the stand, and testified to a very small part of what had occurred between himself and Peter and

J. E. Swint leading up to the execution of the lease: Krumrine v. Grenoble, 165 Pa. 107; Dumbach v. Bishop, 183 Pa. 608.

Cross-examination may extend to other matters which limit, qualify or explain the facts stated on the direct examination or modify the inferences deducible therefrom, provided only that such matters are directly connected with the facts testified to in chief: Blake v. Powell, 26 Kan. 326; Haynes v. Ledyard, 33 Mich. 319; Mayer v. People, 80 N. Y. 364; Baird v. Daly, 68 N. Y. 547; Mason v. Tallman, 34 Me. 472; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. Rep. 471; Eames v. Kaiser, 142 U. S. 488; 12 Supr. Ct. Rep. 302; Thomas v. Miller, 151 Pa. 482; Miller v. Baker, 160 Pa. 172.

*A. Leo Weil*, with him *Charles M. Thorp*, for appellees.—In this action, in which Joseph Swint, the plaintiff, claimed title by oral arrangement with his father, Peter Swint, who at the time of trial was dead, against defendants, Locke & Leidecker, who claimed by deed from Peter Swint, Joseph, as a witness was clearly incompetent to testify to any transactions between himself and his dead father, unless such transactions were in the presence of a living witness who had first been called and had testified as to these same transactions: Kauss v. Rohner, 172 Pa. 481; Brumbach v. Johnson, 187 Pa. 602.

The plaintiff himself declared that there was no conversation between himself and Locke with reference to a share in the oil at the time the second or Locke lease was made. Nobody but Madie Swint testified that there was such a conversation, but she was contradicted by the plaintiff, her father. The conversation between the father and son, which by various efforts Joseph, the plaintiff, tried to introduce, and which occurred long prior to the making of the Locke lease, in fact, when the first or Hunter lease was made, some years before, even if Joseph had been a competent witness thereto, or if the other witnesses had testified thereto, would not have been relevant or material to the issue, which related solely to the Locke lease.

Opinion by Mr. Justice Potter, January 6, 1902:

This action was brought by George W. Acklin, administra-

tor c. t. a. of the estate of Peter Swint, deceased, and J. E. Swint, for the use of J. E. Swint, against the McCalmont Oil Company to recover royalties under leases made by Peter Swint and J. E. Swint to W. G. Hunter & Company and to H. W. Locke, subsequently assigned to the defendant company, for certain oil lands situated in Franklin township, Allegheny county, Pennsylvania.

After suit brought, H. W. Locke and F. W. Leidecker, assignees of all the right, title and interest of Peter Swint in the lease were admitted on their own petition as defendants in the case.

From the testimony the following facts appear: Peter Swint in his lifetime, was the owner in fee of a farm of 120 acres in Franklin township, Allegheny county. In 1883 his son J. E. Swint, came to live with him on the farm, and worked it on shares. On December 3, 1885, Peter and J. E. Swint made an oil lease to W. G. Hunter & Company for forty acres of the farm for the term of twenty years, which was duly acknowledged and recorded. On October 14, 1887, Peter and J. E. Swint made another oil lease to H. W. Locke for the entire 120 acres which was also acknowledged and recorded. By subsequent assignments, both of these leases became vested in the McCalmont Oil Company, the defendant.

Under these leases the lessors were to be paid a royalty of one eighth of the oil produced. On October 17, 1889, Peter Swint assigned to Henry W. Locke and F. W. Leidecker all his right, title and interest in the Locke lease. On May 3, 1895, J. E. Swint brought an action against the McCalmont Oil Company to recover royalty under the leases. It appeared that the defendant in that suit had paid the royalties in full to Peter Swint and his assignees, and as the plaintiff had given no notice of any claim upon his part, he was not permitted to recover: Swint v. McCalmont Oil Co., 184 Pa. 202. It was also held in that case that the lessee might show the circumstances under which the plaintiff signed the lease, as a reply to his demand for one half of the rent reserved and that this would not amount to a denial of the landlord's title, but only to a denial that as to the son, the lease created that relation.

On April 13, 1898, the present suit was brought to recover royalties which had accrued since the date of the first suit.

On the trial, the plaintiff as his case in chief put in proof the leases and showed that he was a cropper, occupying the farm with his father and then rested.

The defendants showed title to the farm in Peter Swint, the father, and conveyances from him to Locke and Leidecker, the defendants. They also showed the circumstances under which J. E. Swint signed the lease, and that he did not do so as lessor, that he made no claim to the land, but stated that it was his father's farm, but would probably be his when his father got through with it. The defendants offered no testimony whatever as to any declarations of Peter Swint.

The court below excluded any testimony offered by the plaintiff in rebuttal as to statements made by Peter Swint at and before the time of the execution of the lease, as to the alleged interest of J. E. Swint in the oil. The court further refused to give binding instructions for the plaintiff, and submitted to the jury the question, " Whether Joseph E. Swint although in the lease named as a lessor and presumptively entitled to one half of the royalty was in point of fact, such lessor and entitled to any of the royalty." The verdict was for the defendant.

The first eleven assignments of error relate to rulings upon offers of evidence. The first assignment is in plain disregard of the rules of this court in that it fails to quote the testimony which was given under the offer. It will, therefore, be disregarded : Raymond v. Schoonover, 181 Pa. 357 ; Fritz v. Lebanon Mutual Ins. Co., 154 Pa. 384.

The second and third assignments allege error in the exclusion of certain questions, as not being cross-examination. We think the rulings were right. The questions asked were not properly cross-examination as they did not relate to anything which had been brought out by the examination in chief. These assignments are, therefore, overruled.

The fourth specification of error has given us some concern. It alleges that the court erred in sustaining defendant's objection to the offer made by plaintiff to prove by the witness, Madie Swint, that at the time of the execution of the lease, her grandfather Peter Swint stated to the lessee that J. E. Swint was to have one half of the royalty. In other words, the offer was to prove the declaration of Peter Swint (who was dead) as made to Locke with reference to the interest of J. E. Swint

in the oil.   The offer was objected to as incompetent, irrelevant and not rebuttal.   As to the first objection, the witness was not a party in interest, and her testimony was therefore competent.   We see no reason either, to question the relevancy of the offer.   Its exclusion can, therefore, be only justified upon the ground that it was not rebuttal.   Justice STRONG said in Stetson v. Croskey, 52 Pa. 230, " The general rule is that a plaintiff cannot claim as a right to give as evidence in rebuttal that which he might have given in chief.   To this there are doubtless several exceptions not easily susceptible of classification. Most of them, however, are allowed in cases where the defense set up is some new matter not directly, but only inferentially conflicting with the averments of the plaintiff.   Such a defense and the evidence to support it may not be anticipated, and hence a plaintiff is allowed to assail it by rebutting evidence, though that evidence may have been admissible in chief."

In the present instance the evidence offered by the plaintiff and rejected by the court does not seem to come within any such exception.   The only question at issue here was whether or not the plaintiff was a co-lessor with Peter Swint.   The matter set up in the defense was in direct denial of the plaintiff's averment.   The evidence given by the defendants to show that the plaintiff had claimed no interest in the land or in the oil at the time of the execution of the lease, was a direct answer to the plaintiff's case.   The evidence included in the plaintiff's offer in rebuttal was but cumulative proof, of that which they were bound to establish, and which they had attempted to establish by their evidence in chief.   We do not see that it can be considered as an answer to a new or unexpected defense. The offer was, therefore, properly excluded as not being rebuttal testimony.

Furthermore the offer was to contradict the evidence of the plaintiff himself upon that particular point, and he cannot complain that the court took the case as he made it, in this respect, even though another witness might have done more for him : Kohler v. Penna. R. R. Co., 135 Pa. 346, 357.

With reference to the fifth, sixth, seventh, and eleventh assignments of error, the offers to show declarations of Peter Swint to the plaintiff and his wife, were properly overruled.   The issue was between J. E. Swint and Locke and Leidecker, who

were assignees of Peter Swint, who was dead. The interest
of the plaintiff was adverse to that of his father and the latter's
assignees. This brought him squarely under the express terms
of the act of May 23, 1887. He was clearly not a competent
witness. Nor is the plaintiff helped in any way by the act of
June 11, 1891. Locke did not testify as to the declarations of
Peter Swint, and the question is directly ruled by Kauss v.
Rohner, 172 Pa. 481, Thomas v. Miller, 165 Pa. 216, and Roth's
Est., 150 Pa. 261.

The eighth assignment alleges error in the exclusion of
plaintiff's offer to explain the long delay in proceeding upon
his claim for royalty. The allegation of delay was not new
matter brought out in the evidence of defendants, but was set
up in the affidavit of defense, so that the plaintiff had full no-
tice, and could easily have met the allegation as a part of the
case in chief. As such, it might have had some relevancy, but
when offered in rebuttal it was properly excluded.

In the ninth assignment, plaintiff complains that he was not
allowed to explain what he meant by certain testimony in the
former trial, offered by defendants. The complaint seems to
be well founded. We can see no reason for denying the right
to make the desired explanation. The general rule is that a
party has a right in rebuttal, to re-examine his witnesses as to
matters that require explanation. But whatever error there
may have been in this ruling, was corrected by the voluntary
statement of the plaintiff himself in the further course of his
testimony in which he did make a full explanation of the testi-
mony referred to, by stating that there was no conversation
between himself and Locke, with reference to a share in the
oil at the time the lease was made. This statement by the
witness cured any possible injury which might have resulted
from the ruling complained of in this assignment.

The tenth assignment of error is not entitled to considera-
tion because of its failure to quote the evidence excluded, and
we are therefore unable to judge as to its admissibility. If
however as indicated, it excluded testimony as to Peter Swint's
declarations, the offer was clearly inadmissible and was rightly
rejected.

The remaining assignments of error are to the charge of the
court, and refusal to give binding instructions in favor of

the plaintiff. We see no merit in any of them. By his own evidence the plaintiff showed that he was merely a cropper, and as such he could acquire no property interest in the oil which was the subject of the lease : McCormick v. Skiles, 163 Pa. 590. The plaintiff also admitted that there was no conversation when the Locke lease was signed, about a share of the oil. Under this evidence the court would have been justified in directing a verdict for defendants. In submitting the case to the jury, the trial judge gave the plaintiff the full benefit of every doubt.

The twentieth assignment is to the action of the court in affirming defendant's sixth request for instructions. This point was however directly in line with the opinion of this court in Swint v. McCalmont Oil Co., 184 Pa. 205 ; and its affirmation was therefore entirely proper.

The assignments of error are all overruled and the judgment is affirmed.