## Wanamaker *v.* Buchanan, Appellant.

*Landlord and tenant—Cropper—Contract—Execution—Leasing on shares.*

A cropper is one hired to work land and to be compensated by a share of the produce. Such a contract gives him no legal possession of the premises, further than as a hireling. The legal possession remains in the hirer or landlord, and hence the remedy by distress is not applicable to him.

Leasing on shares is where the owner of a farm puts the worker of it into possession under an agreement to receive as compensation or rent a certain portion of the actual annual crop. In these cases the farms are not leased, but the owner occupies a dual position, being a tenant in common with the worker as to the crop, and remaining virtually in possession, as the worker is his laborer. Therefore, the owner cannot distrain, nor can the whole crop be sold for a debt of either owner or worker.

Where a written agreement between an owner of a farm and another person shows that the latter is to cultivate the land and receive a one-half interest in the crops, but all moneys are to be paid to the owner, and after net proceeds ascertained, one-half thereof are to be paid to the cropper, a creditor who has obtained a judgment against the cropper cannot levy upon a "half interest" in crops upon the farm; but if it appears that the cropper was to furnish all the poultry, and the owner of the land was to have a one-half interest therein, the creditor of the cropper may levy upon the latter's interest in the poultry.

Argued Nov. 20, 1906. Appeal, No. 168, Oct. T., 1906, by

defendant, from judgment of C. P. Chester Co., Oct. T., 1905, No. 29, on verdict for plaintiff in case of John Wanamaker v. W. H. Buchanan. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed in part.

Sheriff's interpleader to determine the ownership of stock, poultry and crops upon a farm. Before BUTLER, J.

The facts are stated in the opinion of the Superior Court.

The court charged as follows:

We are requested to say that, under all the evidence in this case, the verdict must be for the plaintiff. I take it for granted that that is upon the ground, as contended by the plaintiff, that the contract under which the parties were operating, the lease dated April 1, 1905, gives the tenant Wachter no title in any of the property upon the premises, but only the right to receive one-half of the proceeds of that property.

Mr. Gheen: A cropper's lease, is our contention.

The Court: The point is affirmed. The lease is very long, and there are a half dozen different attempts to make clear just what the relations of the parties are with respect to the property and the title, and, taking them altogether, it is very much more difficult to reach a conclusion as to a proper interpretation of the paper than if it had all been done in one place and briefly. Our impression is, however, and we are going to so hold at this time, that, while the terms of the lease are not free from some ambiguity, yet, taking all parts of the lease into consideration, and particularly in connection with the eighteenth paragraph : " In consideration of the faithful performance by the party of the second part of the covenants and agreements herein contained on his part to be performed, the said party of the second part shall receive one-half of the net proceeds or earnings of the farm. But all moneys or proceeds must first be paid over to the party of the first part, or his duly authorized representative, and after the net proceeds or earnings have been ascertained by the party of the first part, or his duly authorized representative, one-half of the same shall then be paid by the party of the first part to the party of the second part,"—interpreting, as I say, the relations of the parties

here in the light of all the various provisions contained in the articles, and having regard particularly, in the end, for the clause just referred to, we are inclined to believe that the true intent and purpose of the parties was, to put the whole title to everything raised upon this property,—stock, crops and poultry,—in the landlord, and that the use of the term " half interest," etc., where it occurs, is simply intended to indicate the division that would ultimately be made,—not to indicate title, but to indicate the extent of interest in the way of compensation or division of the proceeds when the property should be finally disposed of.   Entertaining that view, that Wachter, the tenant, had no title to any of the property, levied upon on the premises, it follows that the property was not subject to Wachter's debt; it was not subject to be levied upon by Mr. Buchanan to par Wachter's debt, and that it does not belong to Mr. Wanamaker, and that the verdict here, therefore, must be in his favor.   In other words, you will render a verdict in favor of the plaintiff.

Verdict and judgment for plaintiff.   Defendant appealed.

*Error assigned* was the charge of the court, quoting it.

*Charles H. Pennypacker,* for appellant.—The tenant's interest in the stock, poultry and crops upon the Wanamaker farm was subject to levy: Snyder v. Stehman, 10 Pa. Superior Ct. 639 ; Loose v. Scharff, 6 Pa. Superior Ct. 153.

*John J. Gheen,* for appellee.—One hired to work land and receive as compensation part of the produce is a cropper, not a tenant : Adams v. McKesson's Executrix, 53 Pa. 91.

A contract for cropping gives the cropper no legal possession of the premises further than as a hireling ; the legal possession is in the hirer and the remedy by distress is not applicable : Steel v. Frick, 56 Pa. 172; McCormick v. Skiles, 163 Pa. 590.

OPINION BY HEAD, J., February 25, 1907 :

We may agree with the learned trial court that the correct construction of the agreement of April 1, 1905, by which the rights of the parties to the present issue must be determined,

is not wholly free from difficulty. The many sections and provisions of the instrument are not strictly homogeneous, but of a somewhat composite character. Considering the paper in its entirety and drawing its meaning from its " four corners," we are led to the conclusion that Wachter became a cropper of the land of Wanamaker and that the relation of landlord and tenant was never created between them.

" A cropper is one hired to work land and to be compensated by a share of the produce. Such a contract gives him no legal possession of the premises, further than as a hireling. The legal possession remains in the hirer or landlord, and hence the remedy by distress is not applicable to him: " Steel v. Frick, 56 Pa. 172.

If one be hired to work land, receiving for his compensation part of the produce, he is a cropper, not a tenant. " He has no interest in the land, but receives his share as the price of his labor: " Adams v. McKesson, 53 Pa. 81.

" What is called ' Leasing on Shares ' is also customary, in which case the owner of the farm puts the worker of it into possession under an agreement to receive as compensation or rent a certain portion of the actual annual crop. In these cases the farms are not leased, but the owner occupies a dual position, being a tenant in common with the worker as to the crop, and remaining virtually in possession, as the worker is his laborer. Therefore, the owner cannot distrain, nor can the whole crop be sold for a debt of either owner or worker: Jackson and Gross on Landlord & Tenant, 27, 28 ; s. c., 8 Am. & Eng. Ency. of Law, 2d ed., 324.

Turning, then, to the agreement it is to be observed that there is a complete absence of the familiar words " grant, demise and let," or other like words adequate for the creation of an estate for years in land. In their stead we have the following : " That the said party of the first part, for and in consideration of the performance of the covenants, etc., doth hereby agree to give the party of the second part a one-half interest in the crops to be raised upon the farm of said party of the first part, located," etc. The idea of a tenancy as to the land is further excluded by sec. 20 which provides : " The said party of the second part shall be given a monthly lease, without cost, to the dwelling located upon the premises heretofore described," etc.

Had it been the intention to lease the farm to a tenant, the building would have gone with the land and such a section as the one cited would be both useless and meaningless. Sec. 18 seems to even more emphatically stamp the relation between the parties as that of landowner and hired man, employer and employee, and we quote it in full. "In consideration of the faithful performance by the party of the second part of the covenants and agreements herein contained on his part to be performed, the said party of the second part shall receive one-half of the net proceeds or earnings of the farm. But all moneys or proceeds must first be paid over to the party of the first part, and after the net proceeds or earnings have been ascertained by the party of the first part, one-half of the same shall then be paid by the party of the first part to the party of the second part." By the express terms of sec. 3, Wachter was required " to furnish and pay for all help and labor required for the proper cultivation of the farm." In discharge of this obligation he hired Buchanan, the defendant, who continued to serve until there was due him upwards of $300. It would hardly be contended that the landowner was under any obligation, legal or moral, to pay this debt. Buchanan having obtained judgment against Wachter issued execution thereon and caused a levy to be made on a " half interest " in certain crops, live stock and poultry found upon the farm. Claim to the property levied on having been made by Wanamaker, the sheriff obtained a rule on the parties to interplead, and this issue was framed to try the title to the property seized.

Now it ought to be clear that the rights of Buchanan, the judgment creditor, can rise no higher than those of Wachter, the debtor. Had the latter, at the time of the levy, advanced a claim to divide the live stock, growing crops, or hay, grain or straw in the barn and take away the one-half in kind, such claim would have been effectually met and answered by a reference to his agreement. The compensation therein provided for his services was not the transfer to him of the title to one-half the live stock on the farm, all of which, at the inception of his relations with Wanamaker, belonged to the latter; nor was it the ownership of one-half of the crops, growing or grown, regardless of the cost and expense of production. But it was the right to receive, in the language of the eighteenth section,

" one-half of the net proceeds or earnings of the farm." The right to first receive the gross proceeds and to make the proper deductions therefrom necessary to ascertain the net proceeds, was clearly and expressly declared to be vested exclusively in the landowner. In other words, Wachter was but a cropper, a man who had agreed to exchange his labor for a compensation none the less fixed and definite because its amount was contingent upon the success of his own efforts. With the ascertainment and payment of that compensation every right secured to him by his agreement would have been satisfied. But the legal possession and right of possession of the physical property levied on, except the poultry, remained at all times in the landowner. As to these items there was no foundation of title, absolute or qualified, in the judgment debtor on which the levy could rest, and the learned court below was therefore right in directing a verdict for the plaintiff. Wachter may be entitled to an account, and such account may show there is still due and unpaid some part of the compensation secured to him by his agreement. But these matters can neither be discussed nor disposed of in this feigned issue, the sole purpose of which is to try the title to specific items of personal property.

The situation of the parties with relation to the poultry levied on seems to have been essentially different from that already considered. By the original agreement offered in evidence, dated August 23, 1902, Wachter was to furnish all the poultry and Wanamaker was " to have a one-half interest therein." Clearly, therefore, the former continued to own the remaining one-half, having never disposed of nor lost his title thereto. By the agreement in force at the time of the levy, Wachter was "to keep up the stock of poultry as it is at the present time," and Wanamaker was to " receive one-half of the proceeds therefrom and have one-half ownership of all poultry on the farm." As to the poultry, therefore, the relation of the parties was practically that of equal partners. Each owned one-half the stock contributed to the joint venture; each was to receive one-half the profits if profit resulted; each to bear one-half the loss if the venture proved unsuccessful. When the agreement was terminated by the notice to quit and Wachter's abandonment of the premises, the time for the liquidation

of the partnership business and for the ascertainment and division of stock and profits or losses had arrived. We are unable to discover any reason why the share of Wachter in the poultry was not the subject of levy. True, it does not appear that the writ was the special one which, since the Act of April 8, 1873, P. L. 65, is commonly used to take in execution the individual interest of a partner in the property of his firm; but such interest may still be levied on and sold under an ordinary fi. fa.: Dengler's Appeal, 125 Pa. 12. "The only peculiarity about such a levy is that it does not bind the goods in specie, nor does the sale, in pursuance of the levy pass them; but the interest of the debtor in the final settlement of partnership accounts in respect to such goods, is what is seized and sold. That interest, however, is leviable," etc.: Smith v. Emerson, 43 Pa. 456. As to the item of "poultry" in the levy, under the undisputed evidence, a verdict for the defendant should have been directed.

We find nothing of merit in the second and third assignments of error and they are accordingly dismissed.

The judgment is reversed and the record remitted with direction to the court below to enter judgment in favor of the plaintiff as to all items embraced in the levy except "poultry," and as to this item to enter judgment for the defendant. The costs of this appeal to be paid by the appellee.